UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RALPH ALICEA,

                                    Plaintiff,

                                                                    9:12-CV-00203
v.
                                                                    (MAD/TWD)
JOHN MALY, M. TRINIDAD, E. BODISON,
S. KOBER, and JOHN/JANE DOE,


                                    Defendants.
_____

APPEARANCES:                                OF COUNSEL:

RALPH ALICEA
Plaintiff *pro se*
04-A-1138
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

HON. ERIC T. SCHNEIDERMAN              ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Counsel for the Remaining Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983,

has been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).  In his

Amended Complaint (Dkt. No. 14), Plaintiff Ralph Alicea has asserted claims for violation of his

rights under the First, Fourth, Sixth, and Fourteenth Amendments of the Constitution. (Dkt. No. 14.) Defendants are John Maly ("Maly"), Deputy Superintendent of Security at Shawangunk Correctional Facility ("Shawangunk"); Marta Trinidad ("Trinidad"), a Corrections Officer at Shawangunk; E. Bodison ("Bodison") and S. Kober ("Kober"), Corrections Counselors at Shawangunk; and John/Jane Doe, a Corrections Sergeant at Shawangunk, all sued in their individual capacities. *Id*.

The four named Defendants have moved to dismiss Plaintiff's Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1] (Dkt. No. 24 and November 29, 2012, Text Order adding Defendant Bodison as a movant.) Plaintiff has opposed the motion. (Dkt. No. 31.) For the reasons that follow, I recommend that the Defendants' motion be granted in part and denied in part.

## I.    BACKGROUND

During the time relevant to his claims, Plaintiff was an inmate confined at Shawangunk.[2] (Dkt. No. 14 ¶¶ 17 and 94.) On November 23, 2008, Plaintiff's wife visited his fellow inmate Daniel Monko ("Monko") and brought Monko a thirty-five pound food package. *Id*. at ¶ 26. Corrections Officer Freeman ("Freeman"), allegedly thinking that Plaintiff was attempting to circumvent package restrictions imposed against him in a disciplinary hearing, marked the food items in the package with an ultra violate ink stamp before the package was issued to Monko. *Id*. Two days later, Plaintiff's cell was searched by Freeman to see if he had any of the stamped food.

---

[1]  According to the docket maintained by the Clerk in this matter, John/Jane Doe has yet to be identified and served and is not a party to Defendants' motion to dismiss. (Dkt. No. 14.)

[2]  Plaintiff was transferred to Upstate Correctional Facility ("Upstate") on June 13, 2011. (Dkt. No. 14 at ¶ 94.)

*Id.* at ¶ 28.

Freeman reported finding food items with the ultraviolet stamp, an altered hot pot that was capable of boiling water, and a gang related poster in Plaintiff's cell. *Id*. Freeman filed a Tier III misbehavior report against Plaintiff. *Id*. A Tier III misbehavior report was also filed against Monko. *Id.* at ¶ 30. At his hearing on December 9, 2008, Monko informed Defendant Maly that all of the food items in the package from Plaintiff's wife were still in his possession at the time Plaintiff's cell was searched, and that Freeman had engaged in misconduct. *Id*. The charges against Plaintiff and Monko relating to the stamped food were subsequently dismissed and an investigation of Freeman by prison officials ensued.[3] *Id.* at ¶¶ 32, 34-35.

According to Plaintiff, on the way back to his cell block following a December 11, 2008, interview with prison officials concerning Freeman's alleged misconduct, he was warned by a corrections officer that "Freeman's girl Trinidad was gunning for Plaintiff." *Id*. at ¶ 33. On December 19, 2008, Plaintiff was notified by the hearing officer at his Tier III disciplinary hearing that Freeman had been escorted out of Shawangunk and she would not be allowed to return pending the outcome of the investigation of her search of Plaintiff's cell. *Id.* at ¶ 35. Thereafter, on numerous occasions, members of the Shawangunk staff advised Plaintiff that the matter with Freeman "was far from over and retaliation [would] be forthcoming." *Id*. at ¶ 37.

On December 22, 2008, Plaintiff sent a letter to Shawangunk Superintendent Smith ("Smith") complaining about Freeman's misconduct in connection with her search of his cell. *Id*.

_____

[3] The charges related to Plaintiff's alleged hot pot alteration were also dismissed. (Dkt. No. 14 at ¶ 34.) Plaintiff was found guilty on the sole remaining charge involving the gang related poster and given forty-one days of non-credited pre-hearing cell confinement, forty-five days loss of commissary, package, and telephone privileges, and forty-five days in the Special Housing Unit ("SHU"). *Id*. at ¶ 50.

at ¶ 48.  Plaintiff also filed a grievance against Freeman on January 22, 2009.  *Id*. at ¶ 53.

Despite placing the grievance in a standard white envelope in the interdepartmental facility mail

addressed to the Inmate Grievance Review Committee ("IGRC") and watching the envelope

being deposited in the mailbox in the Shawangunk SHU mailbox, the grievance was not filed and

assigned an IGRC number until January 27, 2009.[4]  *Id*. at ¶¶ 54-55.  The IGRC issued a dead-

locked decision on Plaintiff's grievance against Freeman on February 2, 2009.  *Id*. at ¶ 61.

Plaintiff claims he was denied the right to sign off on the IGRC determination before it was sent

to Smith, who accepted Plaintiff's grievance to the extent that an investigation of Freeman's

alleged misconduct was ongoing.  *Id*. at ¶ 63.  Plaintiff appealed to the Central Office Review

Committee ("CORC") on February 8, 2009.  *Id*. at ¶ 64.

### A. General Claims of Retaliation and Threats of Retaliation Against Plaintiff and his Family

Plaintiff claims that from around December 19, 2008, through June 13, 2010, he and his

family were retaliated against by Shawangunk employees because he had exposed Freeman's

deliberate misconduct.  (Dkt. No. 14 at ¶ 38.)  According to Plaintiff, he was passed over for

facility jobs for which he was qualified, such as law library clerk, and when he went to the

barbershop area, he was threatened by Defendant John Doe[5], who referred to Plaintiff as someone

who likes to get corrections officers in trouble.  *Id*. at ¶¶ 39, 41.  In addition, when Plaintiff's

---

[4]  There are no facts alleged in Plaintiff's Amended Complaint suggesting that he was injured in any way by the five day delay in the filing of his grievance.

[5]  Plaintiff has named only one Doe defendant  John/Jane Doe  in his Amended Complaint.  (Dkt. No. 14.)  Defendant John/Jane Doe is identified in Plaintiff's Amended Complaint as Defendant Trinidad's supervisor in the mail room at Shawangunk.  *Id*. at ¶ 60.  The barbershop area John Doe is not named as a defendant in the lawsuit.

family visited they were deliberately required to wait long periods of time to see him, and on one

occasion, another inmate, rather than Plaintiff, was sent to Plaintiff's visit. *Id*. at ¶ 40. On one

visit, Plaintiff's wife was subjected to racial slurs while she was waiting to gain access to the

visiting area. *Id.* at ¶ 45. According to Plaintiff, as a result of constant threats of retaliation by

Shawangunk employees, Plaintiff, out of concern for his family, no longer allowed family

members to participate in the Family Reunion Program despite being approved to do so on a

number of occasions. *Id*. at ¶ 44.

According to Plaintiff, he filed a number of grievances concerning the alleged retaliation

in addition to making verbal complaints to the Shawangunk executive staff. *Id*. at 40-41, 45, 47.

However, other than the racial slur and one visitation incident, Plaintiff has failed to include facts

identifying specific instances of alleged retaliatory conduct against his family or being passed

over for prison jobs. Nor has Plaintiff identified the individuals alleged to have been involved in

each instance of alleged retaliation in either his Amended Complaint or opposition papers.

### B. Retaliation and Threats of Retaliation by Defendants Bodison and Kober

Defendant Bodison was Plaintiff's Corrections Counselor at Shawangunk. (Dkt. No.14 at

¶ 42.) According to Plaintiff, on one occasion Bodison and Defendant Kober waited for him to

return from an outside medical trip and immediately ushered him into Bodison's office and told

him that he and his family were deemed marked for retaliation.[6] *Id*. at ¶ 43. Plaintiff claims that

Bodison issued him negative quarterly evaluations and refused to expunge SHU references from

---

[6] Construing the *pro se* Amended Complaint liberally, the Court can infer Plaintiff that the alleged threats of Defendants Bodison and Kober (Dkt. No. 14 at ¶¶ 42-43) were undertaken in retaliation for Plaintiff's exposure of Freeman's misconduct. *See Id.* at ¶ 38.

Plaintiff's guidance file even though the corresponding misbehavior reports had been expunged.[7]
*Id*. at ¶ 42; Dkt. No. 31 at 15. Plaintiff has alleged that Bodison continuously threatened him to
the point where Plaintiff refused to meet with him alone, discontinued meeting with him at all for
a period of months, and filed numerous grievances against him. *Id*.

### C. The Initial Withholding and Permanent Confiscation of Plaintiff's Legal Documents

At Plaintiff's request, his appellate counsel sent him copies of all of the discovery
materials, trial transcripts, related court transcripts, and hand written notes related to Plaintiff's
four New York County criminal indictments filed in New York state court. (Dkt. No. 14 at ¶¶
56-57.) According to Plaintiff, the documents were sent as privileged and confidential legal
correspondence. *Id*. The sixty-two pound box of legal documents arrived at Shawangunk on
January 29, 2009, two days after Plaintiff's grievance against Freeman was filed. *Id*. at ¶ 58.
The package was signed for, accepted, and received as legal mail by Defendant Trinidad, who is
alleged by Plaintiff to have shared a close personal relationship with Freeman. *Id*.

Plaintiff had asked for the legal documents for use in preparation of a *pro se*
supplemental brief in his direct appeal from the guilty verdict rendered against him under
criminal indictment No. 29/2000, for which the First Department had granted permission on
November 14, 2006. *Id*. at ¶¶ 21, 56. The guilty verdict had resulted in a sentence imposed on
February 2, 2004, of an indeterminate term of nineteen years to life. *Id*. at ¶¶ 11, 13. The
sentence was consecutive to a twenty-five year to life sentence imposed on September 23, 2003,

---

[7] Plaintiff has also alleged that Bodison's testimony was responsible for Plaintiff being
found guilty on one rule violation charge in the Tier III disciplinary hearing arising out of
Freeman's misbehavior report. However, Plaintiff has made no claim that Bodison's testimony
was untrue or given in retaliation for exposure of Freeman's misconduct. (Dkt. No 14 at ¶ 50.)

as a result of a verdict of guilt on indictment number 8614/2000. *Id.* In addition, Plaintiff claims

to have needed the documents in connection with a *pro se* petition for a writ of habeas corpus

relating to his conviction under indictment number 8614/2000, which he had filed in the United

States District Court Southern District of New York on January 10, 2009. *Id.* at ¶ 52.

Trinidad and her immediate area supervisor, Defendant John/Jane Doe, did not notify

Plaintiff, either orally or in writing, that the box of legal documents had arrived or inform him

that the documents were being withheld from him. *Id.* at ¶ 60. It was not until Plaintiff's

counsel followed up with correspondence in February of 2009, after Plaintiff had failed to

acknowledge receipt of the box of legal documents, that Plaintiff learned Trinidad had signed for

the documents on January 29, 2009 at 13:39 p.m. *Id.* at ¶ 66.

On February 27, 2009, Plaintiff filed a grievance against Trinidad in which he

complained that she had withheld his legal documents in retaliation for his having exposed

Freeman's misconduct. *Id.* at ¶¶ 68-69. Plaintiff notified the IGRC that the retaliatory

withholding of his legal documents was preventing him from, among other things, being able to

properly litigate his pending legal matters and from meeting mandatory court imposed deadlines.

*Id.* at ¶ 69.

During March of 2009, Plaintiff also made verbal complaints to Defendant Maly and

Smith concerning his inability to litigate pending matters and his default on mandatory court

imposed deadlines as the result of Trinidad's retaliatory withholding of his legal documents. *Id.*

at ¶¶ 71-72. Maly informed Plaintiff in March of 2009 that the box of legal documents was

being held in his office pending inspection and review and acknowledged that the box did not

contain anything other than legal documents.[8]  *Id.* at ¶ 73.  Thereafter, on March 20, 2009,

Plaintiff filed a grievance complaining about Maly's confiscation and unauthorized review of the

legal documents from Plaintiff's appellate counsel and resultant denial of access to the courts in

which he had pending litigation.  *Id.* at ¶ 76.  In the new grievance, Plaintiff claimed that Maly

had confiscated the documents in retaliation for Plaintiff's exposure of Freeman's misconduct

and was preventing Plaintiff from properly litigating his pending lawsuits.  *Id.*

On March 23, 2009, the IGRC issued a dead-locked decision on Plaintiff's two

grievances regarding the confiscation of his legal documents, and on March 25, 2009, Smith

denied Plaintiff's appeal, stating that Plaintiff's box of legal documents was suspect legal mail

sent by an anonymous sender.  *Id.* at ¶¶ 80-81.  In April and May of 2009, Plaintiff continued to

plead in vain with Maly to release copies of his legal documents or send the box of documents

back to his appellate counsel.  *Id.* at ¶ 84.

CORC unanimously denied Plaintiff's appeal for review of Smith's denial on May 6,

2009.  *Id.* at ¶ 85.  CORC reiterated Smith's statement that the documents were sent by an

anonymous sender.  *Id.* at ¶ 85.  CORC's decision was final, and Plaintiff never received his legal

documents or learned what had become of them.  *Id.* at ¶¶ 87, 92.

### D.    Plaintiff's Freedom of Information Law ("FOIL") Request

Plaintiff was transferred to Upstate on June 13, 2011, and on November 4, 2011,

submitted a FOIL request to review his entire DOCCS package room file in connection with an

---

[8]  Plaintiff never gave permission for any personnel from the Department of Corrections
and Community Supervision ("DOCCS"), then known as the Department of Correctional
Services, to open his legal correspondence or violate his right to attorney-client privilege.  *Id.* at
¶¶ 74-75.

unrelated civil matter he was litigating. (Dkt. No. 14 at ¶¶ 94-95.) On November 17, 2011, while reviewing the documents produced in response to his FOIL request, Plaintiff discovered what appeared to be the mailing labels for the box of legal documents that had been intercepted, reviewed, and confiscated from Plaintiff by Defendants Trinidad, John/Jane Doe, and Maly. *Id*. at ¶ 97. According to Plaintiff, the labels clearly established that the box of legal documents had been sent to Plaintiff by his legal counsel, contradicting Smith and CORC's findings that the documents were sent to Plaintiff by an anonymous sender. *Id*. at ¶ 98. Plaintiff requested and was provided copies of the mailing labels under FOIL. *Id*. ¶¶ 100-02.

### E.     Impact of the Confiscation of Plaintiff's Legal Documents on his Pending Legal Proceedings

According to Plaintiff, on July 19, 2010, the New York County District Attorney's Office filed a motion in the First Department to preclude Plaintiff from filing the *pro se* supplemental brief on his criminal appeal due to the length of time that had passed since the brief was authorized by the Court. (Dkt. No. 14 at ¶ 89.) Plaintiff was unable to oppose the motion because he had been deprived of his legal documents, and on September 30, 2010, the First Department granted the motion. *Id*. at ¶¶ 90-91. Plaintiff has inferred that he was unable to seek reconsideration of the motion because of the confiscation of his legal documents. *Id*. at 93.

Plaintiff also contends that as a result of the confiscation of his legal documents, he was unable to file legal papers in a timely manner in his habeas corpus proceeding pending in the Southern District of New York. *Id*. at ¶ 88. On December 12, 2011, the defendant in Plaintiff's habeas corpus proceeding filed an answer and memorandum of law opposing Plaintiff's petition. *Id*. at ¶ 105. Plaintiff moved for an extension of time to file his reply papers on December 20,

2011 and advised the court of the confiscation of his legal documents by Defendant Maly. *Id*. at

¶¶ 106-07.  In his opposition papers, Plaintiff states that he was unable to submit a completed

reply with supporting exhibits without the confiscated legal documents.  (Dkt. No. 31 at 20.)

## II.    PROCEDURAL HISTORY

Plaintiff originally commenced this lawsuit against only Defendants Maly and Trinidad.

(Dkt. No. 1.)  The claims in Plaintiff's initial Complaint arose largely out of the withholding and

subsequent permanent confiscation of the box of legal documents by Trinidad and Maly and the

alleged mishandling of grievances filed by Plaintiff concerning both Freeman's alleged

misconduct and Plaintiff's legal documents.  *Id*.  In a Decision and Order filed on May 1, 2012,

Judge D'Agostino granted Plaintiff's application to proceed *in forma pauperis*.  (Dkt. No. 5.)

Based upon an examination of the sufficiency of the allegations in Plaintiff's complaint under 28

U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the District Court dismissed Plaintiff's: (1)

official capacity claims on Eleventh Amendment grounds without leave to amend, *id*. at 6-7; (2)

harassment claims on the grounds that verbal harassment unaccompanied by injury is not

actionable under § 1983, *id*. at 7; and (3) claims that he was "denied meaningful access to the

inmate grievance procedure and/or that his grievances were not thoroughly investigated and

considered," on the grounds that because grievance procedures are not required by the

Constitution, failure to insure that grievances are properly processed does not create a claim

under § 1983.  *Id*. at 8.

Plaintiff was granted leave to file an amended complaint by Text Order dated May 17,

2012, and filed his Amended Complaint adding Kober, Bodison, and John/Jane Doe as

Defendants on June 25, 2012.[9]  (Dkt. No. 14.)  Defendants Kober, Trinidad and Maly moved to

dismiss on November 7, 2012.  (Dkt. No. 24.)  The Court granted Defendant Bodison's request

to be added as a movant (Dkt. No. 30) by Text Order dated November 29, 2012.

## III.    ANALYSIS

### A.    Legal Standard Governing Motions to Dismiss for Failure to State a Claim

A defendant may move to dismiss a complaint "for failure to state a claim upon which

relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).  The motion tests the

formal legal sufficiency of the complaint by determining whether it conforms to Rule 8(a)(2) of

the Federal Rules of Civil Procedure, which requires that a complaint include "a short and plain

statement of the claim showing that the pleader is entitled to relief."  *Bush v. Masiello*, 55 F.R.D.

72, 74 (S.D.N.Y. 1972).  Satisfaction of the requirement that a plaintiff "show" that he or she is

entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a

complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial

experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not

shown -- that the pleader is entitled to relief." *Id.* at 679  (internal citation and punctuation

omitted).

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there

---

[9]  The District Court, in granting Plaintiff leave to file an amended complaint, found that the Amended Complaint did not reassert claims previously dismissed in the Court's May 1, 2012 Order.  (Dkt. No. 15 at 3.)

are not "enough facts to state a claim that is plausible on its face." *Id.* at 570.  While Federal

Rule of Civil Procedure 8(a)(2), which sets forth the general rules of pleading, "does not require

detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me-

accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted).  A complaint

which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice.

*Id.* (citation omitted)

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the

material facts alleged in the complaint as true and construe all reasonable inferences in the

plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).

However, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's]

supporting papers liberally, and . . . interpret them to raise the strongest arguments that they

suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572

F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even

after *Twombly*).  Furthermore, "[i]n cases where a *pro se* plaintiff is faced with a motion to

dismiss, it is appropriate for the court to consider materials outside the complaint to the extent

they are consistent with the allegations in the complaint." *See, e.g., Donhauser v. Goord*, 314 F.

Supp. 2d 119, 121 (N.D.N.Y. 2004) (considering factual allegations in plaintiff's opposition

papers) (internal quotations and citations omitted), *vacated and amended in part on other*

*grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004).

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

### B.     Defendant's Statute of Limitations Argument for Dismissal

Defendants contend that Plaintiff's First, Second, Fourth, Fifth, Sixth, and Seventh claims for relief against Defendant Trinidad, all arising out of the confiscation of the box of legal documents sent to Plaintiff by his appellate counsel, are barred by the statute of limitations.[10] Claims brought under § 1983 have a three year statute of limitations. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989); *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994). While the statutory period is determined by state law, federal law determines the accrual of a § 1983 claim. *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997). Generally speaking, a § 1983 claim accrues when a plaintiff knows or has reason to know of the harm done to him. *Eagleston*, 41 F.3d at 871 ("the crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action.") (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)); *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (what matters for accrual purposes is "when the plaintiff knows or has reason to know of *the harm* that he seeks to

---

[10]  Although Defendants' Memorandum of Law does not specifically state that the argument for dismissal on statute of limitations grounds is limited to Trinidad, the only pre-January 30, 2009 action identified as barred in Defendants' motion papers is Trinidad's receipt of the box containing Plaintiff's legal documents on January 29, 2009.  (Dkt. No. 24-1 at 4.)

13

redress . . . , not when plaintiff knows of [conduct] that will, sometime in the future, give rise to that harm.") (internal citation and quotation marks omitted).

Trinidad contends that all of Plaintiff's claims relating to the withholding of his legal documents are barred because she received the box in the Shawangunk mail room on January 29, 2009, and Plaintiff's initial Complaint was filed more than three years later on January 30, 2012. (Dkt. No. 24-1 at 4.) In his opposition papers, Plaintiff asserts that he gave the Complaint to prison employees for filing through the United States Postal Service on January 20, 2009. (Dkt. No. 31 at 10-11, 37.) Under the prison mail-box rule, Plaintiff's initial Complaint is deemed to have been filed on the date it was given to prison authorities for mailing. *See Hargrove v. Riley*, No. CV-04-4587 (DGT), 2007 WL 389003, *1, n.1, 2007 U.S. Dist. LEXIS 6899, at * 2, n.1 (E.D.N.Y. Jan. 31, 2007) ("Under the prison mail-box rule, a *pro se* prisoner's complaint is deemed filed when it is delivered to prison authorities.") (citing *Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005)). Therefore, even if Plaintiff's claims related to the confiscation of his legal documents could be deemed to have accrued on January 29, 2009, they would be timely.

There are, in any event, as yet unanswered questions as to when Plaintiff's claims accrued given his allegation that he did not learn until February of 2009, that the legal documents had been delivered to the mail room on January 29, 2009, and did not find out until March of 2009 that Defendant Maly had confiscated the documents pending an investigation. (Dkt. No. 14 at ¶¶ 66, 73.) Given the foregoing, the Court recommends that Defendant Trinidad's motion for dismissal of Plaintiff's First, Second, Fourth, Fifth, Sixth, and Seventh claims for relief as against her on statute of limitations grounds be denied without prejudice.

**C.      Plaintiff's Retaliation Claims Against Defendants Kober and Bodison**

Plaintiff has asserted retaliation claims against Defendants Kober and Bodison in the Third Cause of action in his Amended Complaint. (Dkt. No. 14 at ¶ 116.) Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Pidlypchak*, 389 F.3d at 381-83. Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official    even those otherwise not rising to the level of a constitutional violation    can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkiewicz,* 534 U.S. 506.

To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff    namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a

causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Pidlypchak*, 389 F.3d at 380 (citing *Dawes,* 239 F.3d at 492).

Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Those factors include: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation. *Id.* (citing *Colon*, 58 F.3d at 872-73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.* The Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citing *Gorman-Bakos v. Cornell Co-op Extension*, 252 F.3d 545, 555 (2d Cir. 2001)).

1.     Defendant Kober

In his Amended Complaint, Plaintiff has alleged that Defendants Kober and Bodison retaliated against him for exposing Freeman's misconduct by threatening that Plaintiff and his family were marked for retaliation.[11]  (Dkt. No. 14 at ¶¶ 38, 43.)  Plaintiff has not, however, set

---

[11]  The filing of grievances is protected First Amendment conduct for purposes of a retaliation claim. *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003) (filing grievances constitutes constitutionally protected activity).  Plaintiff filed a grievance against Freeman for her alleged misconduct.  (Dkt. No. 14 at ¶ 53.)  Plaintiff also wrote to Smith complaining of Freeman, another constitutionally protected activity. *See Decayette v. Goord*, No. 9:06-CV-783,

forth facts showing that Kober was involved in his being passed over for jobs, the confrontation in the barbershop area, the alleged mistreatment of Plaintiff's family, including directing racial slurs at his wife and making his family wait long periods of time to visit, or any other specific act of retaliation beyond his alleged threats. (Dkt. No. 14 at ¶¶ 39-41, 45.) Therefore, Plaintiff has not stated a claim against Kober with regard to those alleged acts of retaliation. *See Pidlypchak*, 389 F.3d at 380 (to state a retaliation claim, plaintiff must allege facts making a facially plausible showing that the defendant was involved in taking adverse action against him); *Iqbal,* 556 U.S. at 678 ("naked assertion[s] devoid of further factual enhancement" are not enough to state a facially plausible claim) (citation and internal quotation marks omitted); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citation and internal quotation marks omitted).

The only factual allegations supporting personal involvement by Kober in specific retaliatory conduct are allegations that he made verbal threats to Plaintiff. (Dkt. No. 14 at ¶ 43.) Whether or not verbal threats constitute adverse action depends largely upon "their degree of specificity and the context in which they are uttered." *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 326 (W.D.N.Y. 2007). "[V]ague intimations of some unspecified harm generally will not rise to the level of adverse action for the purpose of a First Amendment retaliation claim." *Id*; *see also Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) ("The less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights."); *Alicea v.*

---

2009 WL 1606753, at *9, 2009 U.S. Dist. LEXIS 48127 (N.D.N.Y. June 8, 2009) (sending a letter of complaint to a prison official is constitutionally protected activity).

*Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) (defendant's "alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance against [defendant] di[d] not give rise to a First Amendment retaliation claim.")

The Court concludes that Kober's vague threat of retaliation does not constitute adverse action for purposes of a retaliation claim. Given the absence of facts showing a facially plausible adverse action by Kober, the Court recommends that Plaintiff's retaliation claim against Kober set forth in the Third Cause of Action in his Amended Complaint (Dkt. No. 14 at ¶ 111) be dismissed, but that in light of Plaintiff's *pro se* status, he be granted leave to amend.

### 2.    Defendant Bodison

Defendants' moving papers do not address the claims against Defendant Bodison, who was not a party to the motion to dismiss at the time it was originally filed. (Dkt. No. 24-1.) Moreover, Defendant Bodison did not request leave to file supplemental motion papers challenging the sufficiency of Plaintiff's claims against him. The Court is nonetheless required to examine the sufficiency of those claims under 28 U.S.C. § 1915(e)(2)(B).[12]

Plaintiff has alleged that Bodison not only joined with Kober in telling Plaintiff he and his

---

[12]    28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, the court is required to dismiss the case if at any time it is found to be (i) "frivolous or malicious," or to (ii) "fail to state a claim upon which relief can be granted." 28 U.S.C. § 1915(e)(2)(B). An action is frivolous under § 1915(e)(2)(B)(i) when either: "(1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (internal quotation marks omitted). To avoid dismissal for failure to state a claim under § 1915(e)(B)(ii), a complaint must, as with a Rule 12(b)(6) motion, plead enough facts to state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. A *pro se* plaintiff proceeding *in forma pauperis* should be afforded the same opportunity to amend his complaint prior to dismissal for failure to state a claim as a fee-paid plaintiff. *See Gomez v. USAA Federal Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999) (per curiam) (vacating § 1915(e)(B)(ii) dismissal where court failed to give plaintiff leave to amend).

18

family were marked for retaliation, but that Bodison continuously threatened Plaintiff to the point where Plaintiff refused to meet alone with Bodison, stopped meeting at all with him for a number of months, and filed grievances against him.  (Dkt. No. 14 at ¶ 43; Dkt. No. 31 at 14.)  As with Kober, Plaintiff's Amended Complaint and opposition papers say nothing about the specifics of Bodison's verbal threats, making them too vague to constitute adverse action for purposes of a retaliation claim.  *See Bumpus*, 495 F. Supp. 2d at 326 ("vague intimations" of unspecified harm generally do not constitute adverse action).  Furthermore, Plaintiff has not alleged facts making a plausible showing that Bodison was personally involved in Plaintiff being passed over for jobs, the barbershop incident, or the alleged mistreatment of Plaintiff's family in retaliation for his exposure of Freeman.  *See Colon*, 58 F.3d at 873 (claim for damages cannot be maintained under § 1983 absent an allegation that defendant was personally involved in the challenged conduct).

However, Plaintiff has asserted specific claims of retaliatory conduct against Bodison. Plaintiff has alleged that Bodison retaliated against him for exposing Freeman's misconduct by issuing him unwarranted negative quarterly evaluations and refusing to expunge SHU references from his guidance file even though the underlying misbehavior reports had been expunged.[13]  (Dkt. No. 14 at ¶ 42; Dkt. No. 15.)  There is case law finding that the issuance of an unfavorable evaluation does not constitute adverse action for purposes of a retaliation claim.  *See, e.g.*, *Rocha v. Zavaras*, 443 F. App'x 316, 319 (10th Cir. 2011) (a low work evaluation is not sufficiently adverse to state a retaliation claim).  However, in this case, Plaintiff's allegations go beyond a single low

---

[13] Interpreting the *pro se* Amended Complaint liberally and construing reasonable inferences in Plaintiff's favor, the Court will assume solely for purposes of this motion, that since Plaintiff has alleged Bodison was retaliating against him for exposing Freeman's misconduct that the alleged retaliatory acts took place after Plaintiff had exposed Freeman's alleged misconduct.

evaluation, and the Court cannot conclude at this point that having Plaintiff's corrections counselor give him multiple negative quarterly evaluations and refuse to expunge the SHU references from his guidance file would not deter a similarly situated individual of ordinary firmness from exercising his constitutional rights. *See Pidlypchak*, 389 F.3d at 380.

Moreover, liberally construed, the allegations in Plaintiff's Amended Complaint make a facially plausible showing that Bodison's actions in issuing Plaintiff negative quarterly reviews and refusing to expunge SHU references from his guidance file were causally connected to Plaintiff's exposure of Freeman's misconduct. (Dkt. No. 14 at ¶¶ 38, 42-43.) While Bodison's general threats of retaliation for exposing Freeman's misconduct may not themselves constitute adverse action for retaliation purposes, they do support an inference that the protected conduct played a substantial part in the actions found to be adverse for purposes of this motion. *See Baskerville,* 224 F. Supp. 2d at 732 (statements by defendant concerning his motivation is a factor to be considered on the issue of causal connection).

Based upon the foregoing, the Court does not find dismissal of the retaliation claim against Bodison set forth in Plaintiff's Third Cause of action to be warranted under § 1915(e)(2)(B) or Defendants' Rule 12(b)(6) motion. Therefore, the Court recommends that Bodison's motion to dismiss Plaintiff's retaliation claim be denied and Plaintiff be allowed to proceed against Bodison on his Third Cause of Action.

**D.** **Access to Court and Free Speech Claims Against Defendants Trinidad and Maly**[14]

Plaintiff contends that in January of 2009, Defendant Trinidad withheld a sixty-two pound box of legal documents sent to Plaintiff by his appellate counsel, never letting Plaintiff know that it had arrived. (Dkt. No. 14 at ¶¶ 56-58.) When Plaintiff found out about the delivery from his counsel and approached Defendant Maly about it in March of 2009, he was told by Maly that the box was in his office pending inspection. *Id*. at ¶ 73. Plaintiff learned from Smith's denial of the appeal on his grievances that the box of legal documents was considered suspect legal mail sent by an anonymous sender. *Id*. at ¶¶ 80-81. The legal documents were permanently confiscated, despite Plaintiff's many requests that the documents be given to him. *Id*. at ¶ 87. Requests that copies of the documents be given to him, that the legal documents be sent back to Plaintiff's attorney, or that Plaintiff be given official documentation stating that his legal documents were being withheld for the courts where he had litigation pending and needed the documents to meet deadlines, are alleged to have fallen on deaf ears. *Id*. at ¶ 77, 84. In November of 2011, while looking at mail room records from Shawangunk produced pursuant to a FOIL request, Plaintiff found what appeared to be mailing labels from the box which clearly showed that the confiscated box of legal documents had been sent by his attorney. *Id*. at ¶ 98.

---

[14] Plaintiff claims that Defendants Trinidad, Doe, and Maly violated DOCCS Directive No. 4421 dealing with privileged correspondence in connection with the withholding and permanent confiscation of his legal documents. However, violation of a DOCCS directive does not state a claim for constitutional violation under § 1983. *See Dillhunt v. Theriault*, No. 9:07-CV-0412 (GTS/DEP), 2009 WL 4985477, at *11, 2009 U.S. Dist. LEXIS 117125, at *3 (N.D.N.Y. Dec. 15, 2009). Although Defendants did not specifically address Plaintiff's claim that the Directive was violated, the claim is subject to dismissal as against all of the Defendants under § 1915(e)(2)(B).

1.    Denial of Access to Courts

In his Fifth and Seventh Causes of Action, Plaintiff claims that Defendants Trinidad,

John/Jane Doe, and Maly's withholding of, and eventual permanent confiscation of, his legal

documents denied him access to courts in violation of his constitutional rights under the Sixth and

Fourteenth Amendments.[15]  The Constitution has been found to mandate that inmates be afforded

access to the courts which is "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S.

817, 821-22 (1977).  "The right of access to the courts requires that prisoners defending against

criminal charges or convictions (either directly or collaterally) . . . not be impeded from presenting

those defenses and claims for formal adjudication by the court." *Bourdon v. Loughren*, 386 F.3d

88, 96 (2d Cir. 2004).  Confiscation of an inmate's legal papers may constitute a denial of access to

the courts.  *Hiney v. Wilson*, 520 F.2d 589, 591 (2d Cir. 1975); *see also Lewis v. Casey*, 518 U.S.

343, 350 (1996) (recognizing right of access to the courts is protected by prohibiting prison

officials from actively interfering with the preparation of legal documents).

"Interference with legal mail implicates a prison inmate's right to access to the courts and

---

[15]    For his First Cause of Action, Plaintiff contends that Defendants Trinidad, Doe and Maly deprived him of his First Amendment right to communicate freely with his counsel by intercepting and withholding his legal documents.  (Dkt. No. 14 at ¶ 109.)  For his Sixth Cause of Action, Plaintiff claims a violation of his Sixth Amendment right to counsel. *Id*. at ¶ 114.  The right of access to the courts includes the right to seek and receive the assistance of counsel. *See Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *partially overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 410 (1989).  The Constitution requires only that an inmate be afforded reasonable access to counsel. *Smith v. O'Connor*, 901 F. Supp. 644, 648 (S.D.N.Y. 1995).  The allegations in the Amended Complaint do not support Plaintiff's First or Sixth Causes of Action against any of the Defendants.  According to Plaintiff, he needed the documents to prepare a *pro se* supplemental appellate brief and to litigate a *pro se* habeas corpus proceeding.  *Id*. at ¶¶ 52, 56-57.  There are no allegations in Plaintiff's Amended Complaint suggesting that, aside from requesting the legal documents which form the basis of Plaintiff's access to court claim, he sought or was deprived of assistance of counsel in connection with either the appeal or habeas corpus proceeding.

free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution."
*Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). To state a valid claim for interference with an inmate's right of access to court, Plaintiff must allege that a defendant "took or was responsible for actions that 'hindered' [a plaintiff's] efforts to pursue a legal claim." *Davis,* 320 F.3d at 351 (quoting *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997)). "In order to survive a motion to dismiss [on an access to courts claim] a plaintiff must allege not only that the defendant's conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." *Cancel v. Goord*, No. 00 Civ. 2042 (LMM), 2001 WL 303713, at *4, 2001 U.S. Dist. LEXIS 3440, at *12 (S.D.N.Y. Mar. 29, 2001) (citing *Lewis,* 518 U.S. at 353). The "actual injury" requirement derives from the standing doctrine. *Lewis*, 518 U.S. at 349. A plaintiff must demonstrate actual injury by showing "that a non-frivolous legal claim had been frustrated or was being impeded" because of the inadequate access to court. *Lewis*, 518 U.S. at 353.

The right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "The injury requirement reflects the facts that 'the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong.'" *Cunningham v. District Attorney's Office for Escambia Cty*., 592 F.3d 1237, 1271 (11th Cir. 2010) (quoting *Christopher*, 536 U.S. at 414-15).

Plaintiff's allegation that Trinidad signed for the box when it was delivered to the Shawangunk mail room raises an inference that she saw the mailing labels showing the box came from counsel and therefore knew that the legal documents did not come from an anonymous

sender. She allegedly nonetheless intentionally withheld the documents from Plaintiff. Thus, Plaintiff has made a facially plausible showing that Trinidad acted in a deliberate and malicious manner for purposes of his access to courts claim.

Maly, who allegedly conducted an investigation of the box of legal documents, may also have been aware that the box did not come from an anonymous sender. Even if he was not aware of the address labels showing that the box came from Plaintiff's counsel, for purposes of this motion, a relatively weak inference of deliberate and malicious conduct on Maly's part may be drawn from the facts alleged in Plaintiff's Amended Complaint for purposes of this motion. According to Plaintiff, he informed Maly on a number of occasions that the documents had come from his attorney, placing Maly on notice that following up with Plaintiff's appellate counsel would be a reasonably necessary part of the investigation he claimed to be conducting. *Id*. at ¶¶ 70-76. Further, Plaintiff has alleged that Maly was made aware that Plaintiff needed the confiscated legal documents to pursue a pending criminal appeal and habeas corpus proceeding and still would neither give Plaintiff the documents nor provide Plaintiff with official notice for the courts that the documents had been confiscated. *Id*.

In addition, Plaintiff has alleged actual injury as a result of the withholding and ultimate confiscation of his documents. *See Lewis*, 518 U.S. at 351 (on an access to court claim, plaintiff must show actual injury). "Actual injury" may be defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim." *Id*. at 348. According to Plaintiff, when the New York County District Attorney moved to preclude Plaintiff from filing the *pro se* supplemental brief the court had authorized on his criminal appeal, Plaintiff was unable to oppose the motion as a result of the confiscation of his legal

documents, and the First Department allegedly granted the motion precluding Plaintiff from filing the brief. (Dkt. No. 14 at ¶¶ 89-91.) Plaintiff also claims that the confiscation of his legal documents impeded the prosecution of his habeas corpus proceeding in the Southern District of New York in that he was unable to file legal papers in a timely manner and was unable to submit a completed reply with supporting exhibits without the confiscated documents. (Dkt. No. 14 at ¶ 88; Dkt. No. 31 at 20.)

Despite making a facially plausible showing of deliberate and malicious conduct by Trinidad and Maly, and actual injury, Plaintiff has failed to state a claim for denial of access to court against either Trinidad or Maly. Because the actual injury requirement does not refer to the denial of access itself but rather to the underlying claim, a plaintiff must describe the purportedly compromised underlying case and set forth sufficient facts to give fair notice of it to the defendants. It must "be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher*, 536 U.S. at 415-16 ("[T]he underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation"); *see also O'Diah v. Fischer*, No. 08-CV-941 (TJM/DRH), 2012 WL 987726, at * 11, 2012 U.S. Dist. LEXIS 39232, at *32 (N.D.N.Y. Feb. 28, 2012) (same); *Guarneri v. Hazzard*, No. 9:06-CV-985 (NAM/DRH), 2010 WL 1064330, at *4, 2010 U.S. Dist LEXIS 26966, at *67 (N.D.N.Y. Mar. 22, 2010) (complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a)).

Plaintiff has failed to comply with the pleading requirements regarding the underlying claims in his criminal appeal and habeas corpus proceeding, without which he cannot be found to

have stated a claim for denial of access to courts.[16]  In light of the foregoing, the Court

recommends that Plaintiff's First, Fifth, Sixth, and Seventh Causes of Action for the alleged denial

of his right to counsel and ability to communicate with counsel, and the denial of access to courts

be dismissed, with leave to amend granted to Plaintiff.[17]

### 2. First Amendment Right to the Free Flow of Incoming and Outgoing Mail

A prisoner's First Amendment free speech rights are implicated when the "free flow of

incoming and outgoing mail" is hindered.[18]  *Davis*, 320 F.3d at 351.  Defendants argue that

Plaintiff has not stated a First Amendment claim in connection with the withholding and

confiscation of his legal documents because an "isolated incident of [legal] mail tampering is

usually [insufficient] to establish a constitutional violation."  (Dkt. No. 24-1 at 5) (quoting *Ahlers*

---

[16]  Plaintiff's claim that his First Amendment right to communicate freely with his
attorneys of records and Sixth Amendment right to counsel were violated by the withholding and
permanent confiscation of his legal documents indicates that he was still represented by assigned
appellate counsel for his criminal appeal.  (Dkt. No. 14 at ¶¶ 16, 109, 114.)  A plaintiff's right to
meaningful access to court is generally satisfied by assignment of counsel.  *See Bourdon v.
Loughren*, 386 F.3d 88, 93 (2d Cir. 2004).  A "[p]laintiff has no constitutional right to 'hybrid'
representation -- simultaneously *pro se* and by counsel," and an access to court claim by a
plaintiff who has been represented at every stage of his criminal proceedings must fail.  *Perez v.
Metropolitan Correctional Center Warden*, 5 F. Supp. 2d 208, 212 (S.D.N.Y. 1998) (quoting
*Faretta v. California*, 422 U.S. 806, 832 (1975)), *aff'd*, 181 F.3d 83 (2d Cir. 1999).  Depending
upon the status of the attorney-client relationship between Plaintiff and his appellate counsel
during the relevant time period, Plaintiff's claim for denial of access to court on his criminal
appeal may be subject to dismissal on the grounds he was represented by counsel.

[17]  The Court recommends dismissal of the claims as against Defendant John/Jane Doe
under § 1915(e)(2)(B) in light of Plaintiff's failure to include the necessary factual allegations
concerning his criminal appeal and habeas corpus proceeding with leave to amend.

[18]  An inmate's right to the free flow of incoming and outgoing mail is not unfettered.
Reasonable restrictions are allowed, provided they further "one or more of the substantial
governmental interest of security, order, and rehabilitation . . . [and are] no greater than is
necessary or essential to the protection of the particular governmental interest involved."  *Davis*,
320 F.3d at 351. (citation and internal quotation marks omitted).

*v. Rabinowitz*, 684 F.3d 53, 64 (2d Cir. 2012)).  A First Amendment free speech claim usually

requires more than one instance of interference with an inmate's mail.  *See Davis,* 320 F.3d at 351

("an isolated incident of mail tampering is usually insufficient to establish a constitutional

violation. . . .  Rather the inmate must show that prison officials regularly and unjustifiably

interfered with the incoming legal mail") (citation and internal quotation marks omitted);

*Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986) (isolated incident of interference with

legal mail "might not give rise to an action for damages under § 1983 . . . where no showing has

been made that the inmate's right of access to the courts was chilled or the legal representation he

received was impaired"); *see also John v. New York Department of Corrections*, 130 F. App'x 506,

507 (2d Cir. 2005) (distinguishing between interference with legal mail claims for denial of access

to courts and those for free speech, and limiting the general requirement for more than one incident

of mail tampering to free speech claims).

Inasmuch as Plaintiff has alleged only one incident of unjustifiable interference with

incoming legal mail, he has failed to state a claim on his Second Cause of Action for denial of his

First Amendment right to free flowing mail from his attorney against Defendants Trinidad,

John/Jane Doe, and Maly.  Therefore, the Court recommends that Plaintiff's Second Cause of

Action be dismissed as against Trinidad, Maly, and Doe, with leave to amend in the event Plaintiff

is able to allege facts stating a claim.[19]

### 3.    Retaliation Claim

In his Third and Seventh Causes of Action, Plaintiff has alleged a retaliation claim against

---

[19]   Dismissal as against Defendants Trinidad and Maly is recommended under Rule 12(b)(6) and as against Defendant John/Jane Doe under § 1915(e)(2)(B).

Defendants Trinidad and Maly separate and apart from access to court and free speech claims

asserted in connection with the withholding and confiscation of legal documents.  Plaintiff claims

that Trinidad and Maly's alleged actions with regard to the legal documents sent to Plaintiff by his

counsel were undertaken in retaliation for Plaintiff's exposing Freeman's misconduct and filing a

grievance against her    protected First Amendment conduct.  *See Davis*, 320 F.3d at 352-53 (filing

grievances constitutes constitutionally protected activity).

Courts have held that theft, confiscation, or destruction of an inmate's legal documents can

constitute an adverse action for purposes of a retaliation claim.  *See, e.g., Edwards v. Horn*, No. 10

Civ. 6194 (RJS)(JLC), 2012 WL 473481, at *15, 2012 U.S. Dist. LEXIS 18424, at *55 (S.D.N.Y.

Feb. 14, 2012) (retaliatory loss of legal documents prevented plaintiff from prosecuting action,

which was dismissed for failure to prosecute); *Smith v. Maypes-Rhynders,* 07 Civ. 11241, 2009 WL

874439, at *5, 2009 U.S. Dist. LEXIS 131789, at *10-11 (S.D.N.Y. Mar. 31, 2009) (stealing of an

inmate's legal papers could be found sufficiently serious to deter an inmate of ordinary firmness

from exercising his protected First Amendment rights); *Smith v. City of New York*, No. 03 Civ. 7576

(NRB), 2005 WL 1026551, at *3, 2005 U.S. Dist. LEXIS 7903, at *10 (S.D.N.Y. May 3, 2005)

(retaliatory destruction of prisoner's legal documents appears designed to deter plaintiff's exercise

of constitutional rights and constitutes adverse action for purposes of a retaliation claim).  The

Court finds that for purposes of this motion, the allegations in Plaintiff's Amended Complaint

regarding Defendants Trinidad and Maly's actions in withholding and confiscating Plaintiff's legal

documents constitute adverse action for purposes of Plaintiff's retaliation claim.

Furthermore, Trinidad is alleged to have had a close personal relationship with Freeman,

giving her substantial motivation to retaliate against Plaintiff for exposing Freeman's alleged

misconduct. (Dkt. No. 14 at ¶ 58.) Therefore, Plaintiff has made facially plausible showing of a causal connection between Plaintiff's protected conduct in exposing Freeman's misconduct and Trinidad's withholding of Plaintiff's legal documents.

Plaintiff has, on the other hand, failed to allege facts adequately supporting a causal connection between his exposing Freeman's misconduct and Maly's confiscation of his legal documents. There are no factual allegations suggesting that Maly's actions with regard to Plaintiff's legal documents were taken in retaliation for his exposing Freeman's misconduct. In fact, according to the allegations in Plaintiff's Amended Complaint, when Monko told Maly about Freeman's conduct, Maly found Monko not guilty on the Tier III charges Freeman had brought against him with respect to the food and told Monko to report Freeman's conduct to the DOCCS Inspector General's Office immediately. *Id*. at ¶¶ 30-31. Thus, while the Court concludes that Plaintiff has stated a retaliation claim against Trinidad, it concludes he has failed to do so against Maly. The Court therefore recommends that Defendant Maly's motion to dismiss Plaintiff's Third and Seventh Causes of Action for retaliation be dismissed, with leave to amend, and that Defendant Trinidad's motion to dismiss those claims be denied.

### E. Plaintiff's Fourth Amendment Search and Seizure Claim

For his Fourth Cause of Action, Plaintiff has asserted a Fourth Amendment search and seizure claim in connection with the withholding and subsequent permanent confiscation of his legal documents. *However, see Hill v. Griffin*, No. 11-CV-6101-CJS, 2012 WL 92556, at *4, 2012 U.S. Dist. LEXIS 3366, at *10-11 (W.D.N.Y. Jan. 11, 2012) (inmate's claim for interception of his incoming mail is not cognizable under the Fourth Amendment because inmate has no Fourth Amendment protection against unreasonable searches and seizures); *Treglia v. Cate*, No. C 11-3438

LHK (PR), 2012 WL 3731774, at *4, 2012 U.S. LEXIS 122248, at *7-8 (N.D. Cal. Aug. 28, 2012) (well settled law that inmates have no reasonable expectation of privacy in their cells and are not entitled to Fourth Amendment protections against searches and seizures applies equally to inmate's incoming mail). Therefore, the Court recommends that Plaintiff's Fourth Cause of Action be dismissed for failure to state a claim against Defendants Trinidad, Maly and John/Jane Doe *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii), without leave to amend.[20]

### F. Plaintiff's Grievance Claims

In his Amended Complaint, Plaintiff has alleged that the filing of his grievance against Freeman was delayed for five days and his appeal on that grievance sent to CORC on February 8, 2009 was not received by CORC until April 3, 2009.[21] (Dkt. No. 14 at ¶¶ 54-55, 64-66.) Plaintiff also claims that despite his many grievance filings, Defendant Maly took no action to prevent or remedy Plaintiff's loss of employment, loss of family visitation, and negative evaluations by Shawangunk corrections officers and staff. *Id*. at ¶ 47. More generally, Plaintiff has asserted that Defendants Trinidad, John/Jane Doe, Maly, Kober, and Bodison denied him his right to due process under the Fourteenth Amendment and retaliated against him by hindering his utilization of the inmate grievance process by failing to furnish all of the facts and results of investigations so that the IGRC could render an informed decision on Plaintiff's grievance complaints. *Id.* at ¶ 116.

In her Decision and Order filed May 1, 2012, acknowledging that "it is well-established . . .

---

[20] Defendants have not directly addressed whether the Fourth Amendment search and seizure claim in Plaintiff's Fourth Cause of Action states a claim on their motion to dismiss. (Dkt. No. 24.) The Court has nonetheless examined the claim as required under § 1915(e)(2)(B) and found that it does not state a claim against any of the Defendants, including John/Jane Doe.

[21] Plaintiff has not identified any Defendant as having been responsible for the two alleged delays, nor has he alleged facts showing that he was harmed by the delays.

that prison grievance procedures do not confer any substantive right upon an inmate requiring the

procedural protection of envisioned by the Fourteenth Amendment," Judge D'Agostino dismissed

any claims in Plaintiff's initial Complaint that "he was denied meaningful access to the inmate

grievance procedures and/or that his grievances were not thoroughly investigated and considered"

for failure to state a claim under § 1983.  (Dkt. No. 5 at 8.)  *See Rhodes v. Hoy*, 9:05-CV-836, 2007

WL 1343649, at *6, 2007 U.S. Dist. LEXIS 48370, at *12 (N.D.N.Y. May 5, 2007) (inmates have

"no constitutional right of access to the established inmate grievance program."); *Cancel,* 2001 WL

303713, at *3 ("inmate grievance procedures are not required by the Constitution" and therefore a

claim is not created under § 1983 for failure to properly process grievances).

Furthermore, Plaintiff's grievance allegations do not state an access to courts claim because

Plaintiff has alleged that he appealed all of the relevant grievances to CORC, thereby satisfying the

exhaustion requirements included in the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L.

No. 104-134, 110 Stat. 1321 (1996).  Even if Defendants had prevented him from exhausting his

administrative remedies, "a plaintiff whose access to the grievance process has been hindered or

foiled by actions of prison officials [is] excused from the PLRA's exhaustion requirement and

permitted to file suit without having completed that process."  *White v. Clark*, No. No. 9:12-CV-

0986 (NAM/RFT), 2012 WL 5877160, at *8, 2012 U.S. Dist. LEXIS 165432, at *22-23 (N.D.N.Y.

Nov. 20, 2012) (citing *Hemphill v. New York*, 380 F.3d 680, 686-91 (2d Cir. 2004)).

Given the foregoing, the Court recommends that Plaintiff's Eighth Cause of Action claiming

a denial of due process as a result of the improper handling of grievances filed by him be dismissed

as against all of the Defendants for failure to state a claim pursuant to § 1915(e)(2)(B)(ii).[22]  The

Court further recommends that the dismissal be without leave to amend in light of the well-

established law that failure to see that grievances are properly processed does not create a claim

under § 1983.  *See Cancel*, 2001 WL 303713, at *3.

    **ACCORDINGLY**, it is hereby

    **RECOMMENDED** that Defendants Maly, Trinidad, Bodison and Kober's Rule 12(b)(6)

motion to dismiss the Plaintiff's Amended Complaint for failure to state a claim (Dkt. No. 24) be

**GRANTED** in part and **DENIED** in part; and that the claims asserted against Defendant John/Jane

Doe identified below be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

    **IT IS RECOMMENDED** that the Court dismiss the following claims without leave to

amend: (1) Plaintiff's Fourth Amendment search and seizure claim against Defendants Trinidad,

Maly, and John/Jane Doe; and (2) all claims against Defendants, including John/Jane Doe, alleging

that Plaintiff was denied meaningful access to the inmate grievance procedures and/or that his

grievances were not thoroughly investigated and considered, or otherwise properly handled; and it is

further

    **RECOMMENDED** that the Court dismiss the following claims with leave to amend: (1) all

claims against Defendants Trinidad, Maly, and John/Jane Doe for violation of Plaintiff's right to

freely communicate with his counsel; (2) all claims against Trinidad, Maly, and John/Jane Doe for

violation of Plaintiff's right to free flowing incoming and outgoing mail to his counsel; (3) all

---

[22]  Defendants have not directly addressed Plaintiff's Eighth Cause of Action in their
motion to dismiss.  (Dkt. No. 24.)  The Court has nonetheless examined the claim as required
under § 1915(e)(2)(B) and found that it does not state a claim against any of the Defendants,
including John/Jane Doe.

claims against all Defendants alleging violation of DOCCS directives; (4) all claims for retaliation against Defendants Kober and Maly; (5) all claims for denial of Plaintiff's right to counsel against Defendants Trinidad, Maly, and John/Jane Doe; (6) all claims for violation of Plaintiff's right to access to court against Defendants Trinidad, Maly, and John/Jane Doe; and it is further

**RECOMMENDED** that Defendants' motion to dismiss be **DENIED** as to Plaintiff's retaliation claims against Defendants Bodison and Trinidad, and that Defendants Bodison and Trinidad be directed to respond to those claims; and it is

**ORDERED** that the Clerk provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

<u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: May 13, 2013
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge